NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERNATIONAL TRANSPORT MANAGEMENT CORPORATION and OCEAN NAVIGATOR EXPRESS LINE,<br><br>Plaintiffs,<br><br>v.<br><br>BROOKS FITCH APPAREL GROUP, LLC,<br><br>Defendant. | Civil Action No. 11-1921 (DMC)<br><br><br>OPINION |

**FALK, U.S.M.J.**

Before the Court is Plaintiffs' motion for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a). Plaintiffs seek to add claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") as against Joseph Safdieh and Eli Safdieh, principals of Defendant Brooks Fitch Apparel Group, LLC. The motion is opposed. Oral argument was not heard. Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiffs' motion is **denied without prejudice.**

BACKGROUND

A detailed account of the facts of this case, including an overview of the international shipping process as it relates to this case, is set forth in the April 18, 2011 Opinion entered by the Honorable Dennis M. Cavanaugh, U.S.D.J. For purposes of this motion, suffice it to say that Plaintiff International Transport Management Corporation ("ITM") is engaged in the business of

international freight forwarding and acting as a "release agent" for certain common carriers, including Plaintiff Ocean Navigator Express Line ("ONEL"). Beginning in or around 2008, ITM arranged for the shipment of goods into the United States for Defendant, Brooks Fitch Apparel Group, LLC ("Brooks Fitch") and for the payment of applicable freight charges, customs, tariffs, taxes and duties. The shipments were for commercial goods to the ports of Los Angeles and Long Beach, California, Elizabeth/Newark, New Jersey, and New York, New York from manufactures in the People's Republic of China and Cambodia. ONEL acted as the carrier for these shipments and made arrangements with the applicable shipping line(s). Plaintiffs allege, generally, that once the goods at issue arrived in the United States, Defendant wrongfully diverted the goods, caused the goods to be shipped outside the United States, and failed to pay the manufacturers, ITM or ONEL for the goods.

Plaintiffs commenced this action in April 2011 by way of Order to Show Cause seeking a temporary restraining order and a preliminary injunction. Plaintiffs' complaint alleged, <u>inter alia</u>, fraud, conversion and breach of contract. Plaintiffs' request for injunctive relief was denied by Judge Cavanaugh on April 18, 2011. Plaintiffs filed a motion to amend their original complaint to add RICO claims as against Joseph Safdieh and Eli Safdieh in August 2011. This motion was denied without prejudice in October 2011 on the basis that the proposed amended complaint failed to plead the putative RICO claims with adequate specificity. <u>See</u> CM/ECF No. 36. Plaintiffs have now renewed their motion to amend to add the same claims. Defendant opposes the motion, once again, on the basis of futility. In particular, Defendant maintains that the second proposed amended complaint fails to meet the pleading requirements of Federal Rules of Civil Procedure 12(b)(6) and 9(b).

**STANDARD OF REVIEW**

Once a responsive pleading has been filed, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court is to freely grant leave "when justice so requires." Id. The decision to grant a motion to amend a pleading rests in the sound discretion of the district court. Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 330 (1970). Generally, leave to amend should be granted unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) repeated failure to cure deficiencies through previous amendments; or (5) futility. Foman v. Davis, 371 U.S. 178, 182 (1962).

The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, given the liberal standard for the amendment of pleadings, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." See Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F.Supp.2d 761, 764 (D.N.J.2000) (citations omitted). "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) (emphasis added); see also 6 Wright, Miller & Kane, Federal Practice and Procedure, § 1487 (2d ed. 1990).

**DISCUSSION**

Plaintiffs now seek to amend their original complaint to include causes of action against Joseph Safdieh and Eli Safdieh, individually, as principals of and/or individuals associated with Brooks Fitch, for RICO violations. In particular, the proposed pleading asserts causes of action under Sections 1962(b), (c) and (d) of RICO, 18 U.S.C. §§ 1961, et seq., against both individuals. Defendant opposes Plaintiffs' motion on the basis of futility.

1.   **RICO Section 1962(b) Claim**

Under section 1962(b), it is unlawful:

> for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(b). "In order to recover under this section, a plaintiff must show injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1190 (3d Cir. 1993). A plaintiff asserting a section 1962(b) claim must also establish that "the interest or control of the RICO enterprise by the person is as a result of racketeering." Id. The Third Circuit has made clear that "[i]t is not enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise. Rather, it must be established firmly that there is a nexus between the interest and the alleged racketeering activities." Id.

The proposed pleading alleges, in pertinent part:

> Defendant Brooks Fitch is a limited liability corporation owned in whole or in party by defendants Eli Safdieh and Joseph Safdieh. At

> all relevant times defendant Brooks Fitch (the "Enterprise") was an enterprise engaged in, or the activities of which affected, interstate and foreign commerce.  At all relevant times the Enterprise was controlled and operated by defendants Eli Safdieh and Joseph Safdieh.  At all relevant times Defendants Eli Safdieh, Joseph Safdieh (collectively the "Safdieh Defendants") and John Does 1-10 were persons employed by and/or associated with the Enterprise.  At all relevant times, Defendants Joseph Safdieh and Eli Safdieh, individually and/or acting as principals of defendant Brooks Fitch, were and are each a "RICO person" capable of holding a legal or beneficial interest in property, who conducted the affairs of the Enterprise, through a pattern of racketeering . . . .

(Proposed Second Am. Compl., ¶¶ 17-21). The proposed pleading also alleges that, "as a result of Brooks Fitch's theft of these goods and its failure to pay the Sellers in Asia, many of the Sellers (alternatively herein, the "PRC Manufacturers"), commenced legal action in the Chinese courts against ONEL and/or ONEL's parent, Cargo Services." (Proposed Second Am. Compl., ¶ 178). Finally, the proposed pleading alleges that "[a]s a direct and proximate result of Brooks Fitch's failure to make payment to the PRC Manufactures for the purchased goods or provide sufficient collateral to ITM for the value of same, ONEL and Cargo Services, on ONEL's behalf, will ultimately be held liable in the Chinese courts for the full amount of the purchase contracts." (Id., ¶ 198).

Plaintiffs fail to state a claim pursuant to section 1962(b) for two reasons.  First, Plaintiffs have failed to allege facts showing how they have been injured by virtue of the Safdieh Defendants' acquisition of interest in and/or control of the Brooks Enterprise.  As stated above, to properly state a claim pursuant to section 1962(b), a plaintiff must assert "an injury independent from that caused by the pattern of racketeering."  Lightning Lube, 4 F.3d at 1191.  The only injury that the Court can glean from the proposed pleading is that which was allegedly caused by racketeering activity, that

5

is, "Brook's Fitch's failure to make payment" or to "provide sufficient collateral" for the value of same to the manufactures of the products at issue. Such allegations fail to explain what additional injury resulted from the Safdieh Defendants' interest in or control of the Brooks Enterprise. See, e.g., id. at 1191 ("Such an allegation clearly insufficient because it merely parrots the same injury that section 1962(c) is meant to remedy and fails to explain what additional injury resulted from the person's interest of control of the enterprise.").

In addition, the proposed pleading fails to allege a sufficient nexus between the Safdieh Defendants' control of the Brooks Enterprise and the alleged racketeering activity, as is required for claims brought pursuant to section 1962(b). See Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990) ("The amended complaint does not allege a specific nexus between control of any enterprise and the alleged racketeering activity, as is required under section 1962(b)."). Instead, the proposed Second Amended Complaint merely alleges that the Safdieh Defendants were the owners of Brooks Fitch (a limited liability corporation), that Brooks Fitch was an enterprise engaged in interstate and foreign commerce, and that the Safdieh Defendants controlled and/or operated the Brooks Enterprise. These allegations, without more, do not explain how the Safdieh Defendants' interest in Brooks Fitch (or the Brooks Enterprise) is the result of racketeering as opposed to an interest derived from legitimate business activities. Plaintiffs' section 1962(b) claim is thus insufficient as currently pled. See, e.g., Lightning Lube, 4 F.3d at 1191 (affirming district court's dismissal of section 1962(b) claim where the complaint failed to allege how defendant's interest in the joint venture was the result of racketeering as opposed to "an interest derived from Witco and Avis's legitimate activities").

**2.     RICO Section 1962(c) Claim**

Section 1962(c) makes it unlawful:

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

"In order to plead a violation of RICO, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004). A pattern of racketeering activity requires at least two predicate acts which may include, among other things, federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343. Id. Plaintiffs must also allege actual injury to business or property and that such injury was proximately caused by the Defendant's RICO violation(s). See Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000). "[T]he injury to business or property element of section 1964(c) can be satisfied by allegations and proof of actual monetary loss, i.e., an out-of-pocket loss." Id.

Based on the reasons that follow, the Court finds that Plaintiffs have once again failed to plead the predicate acts with sufficient particularity.

**A.     Pattern of Racketeering – Predicate Acts**

The proposed pleading alleges, generally, that the Safdieh Defendants engaged in a scheme to defraud by "wrongfully [taking] custody of approximately 34 shipments of goods produced and shipped for sale by the PRC Manufactures, bound for the United States, for ultimate purchase by Brooks Fitch, without making payment for same." (Proposed Second Am. Compl., ¶ 23). The

Safdieh Defendants allegedly carried out this scheme by making "fraudulent representations[1] regarding the Shipments to induce ITM to release same." (Proposed Second Am. Compl., ¶208). Plaintiffs allege the existence of four predicate acts to establish a pattern of racketeering: (1) federal wire fraud, in violation of 18 U.S.C. § 1343; (2) theft of foreign shipments, in violation of 18 U.S.C. § 659; (3) transportation of stolen goods, in violation of 18 U.S.C. § 2314; and (4) sale or receipt of stolen goods, in violation of 18 U.S.C. § 2315.

Because Plaintiffs allege a fraud-based section 1962(c) claim, they must plead with particularity the circumstances of the alleged fraud. See Lum, 361 F.3d at 223 ("Allegations of fraud must comply with [Rule] 9(b), which requires that allegations of fraud be pled with specificity."); Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

As previously stated, Plaintiffs' section 1962(c) claim is generally premised on an alleged scheme which took place from 2008 through 2011 by which Defendants (a) took custody of certain products by making various fraudulent representations, and (b) then failed to pay Plaintiffs or the manufacturers for said products. For instance, Plaintiffs allege that during a telephone conversation in or around January 2011, Joseph Safdieh represented to Mr. Wolfgang Schmid (of ITM) that approximately $1.9 million in "collateral property" was located at the Sea-Jet Warehouse and that such property would serve as security to Plaintiffs if payment was not made to the manufacturers for

---

[1] Plaintiffs allege that the Safdieh Defendants made several types of fraudulent representations in connection with their scheme: (1) the "general check representation," (2) the "indemnity representation," and (3) the collateral property representation." (Proposed Second Am. Compl., ¶ 152).

8

the purchase of the goods. See Proposed Second Am. Compl., ¶ 151. Plaintiffs further allege that Mr. Schmid learned on or about February 23, 2011 that the "collateral property" was not, in fact, at the location where Joseph Safdieh represented it to be and that Joseph and/or Eli Safdieh knew or should have known[2] as much when making the December 2010 and/or January 2011 representation. See Proposed Second Am. Compl., ¶¶ 90, 142; 159.

     Certainly, simple failure to pay for goods ordered does not constitute a section 1962(c) RICO claim. Plaintiffs have attempted to allege more by claiming that the Safdieh Defendants knew or should have known that the indemnification provided was false each time it was made. See Proposed Second Am. Compl., ¶¶ 159, 160. Although the proposed pleading provides a comprehensive list of the numerous shipments at issue in this matter, including details such as the dates when the various containers were loaded onto the particular vessels, the ports to which they were sent and the checks implicated in the various transactions, Plaintiffs have simply failed to allege sufficient facts to support the fraudulent scheme at the heart of their section 1962(c) claim. At most, Plaintiffs have alleged facts concerning one telephone call between Joseph Safdieh and Mr. Schmid in or around January 2011. This alleged act of deception, alone, does not constitute a pattern of racketeering activity. See, e.g., Kolar v. Preferred Real Estate Investments, Inc., 361 Fed. Appx. 354, 365 (3d Cir. 2010) ("Even accepting . . .that the complaint sufficiently alleged fraudulent activity surrounding the

---

[2] The proposed pleading contains no facts to support the assertion that either of the Safdieh Defendants knew any of their representations were false when made. See generally United States v. Parise, 159 F.3d 790, 796 (3d Cir. 1998) ("RICO liability may extend to those who do not hold a managerial position within an enterprise, but who do nonetheless knowingly further the illegal aims of the enterprise by carrying out the directives of those in control.") (emphasis added); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.1997) ("While state of mind may be averred generally, plaintiffs must still allege facts that show the court their basis for inferring that the defendants acted with 'scienter.' ").

Wheeler Way transaction, that single, finite transaction cannot by itself underpin a pattern of racketeering activity."); Annulli v. Panikkar, 200 F.3d 189, 199 (3d Cir. 1999) ("Theft by deception, like a simple breach of contract or intentional interference with contract, is not a predicate act of racketeering activity enumerated in § 1961(1)."), overruled on other grounds by Rotella v. Wood, 528 U.S. 549, 554-55 (2000).

The remainder of allegations made concerning the predicate acts lack the level of specificity required by Rule 9(b).[3]   In addition, the majority of the generalized allegations set forth in the proposed pleading are lodged against both of the Safdieh Defendants, either jointly or in the alternative, and thus do not place each of the Safdieh Defendants on notice of the precise misconduct with which they are charged.[4] See, e.g., Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984) ("Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged"); Grant v. Turner, No. 09-2381, 2011 WL 1775682, at *9 (D.N.J. May 9, 2011) (dismissing section 1962(c) claim where the proposed pleading failed to "allege with specificity which defendants made 'false promises of free rewards' or which defendants

---

[3] See, e.g., Proposed Second Am. Compl., ¶ 153 ("Between 2009 and the present day, defendants Joseph Safdieh and Eli Safdieh transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, including but not limited to telephone communications and/or electronic mail communications, instructions to ITM to arrange for the international shipment of goods of the thirty-four shipments referenced individually herein.").

[4] See, e.g., Proposed Second Am. Compl., ¶ 159 ("Defendants Joseph Safdieh **and/or** Eli Safdieh knew, or reasonably should have known, that Brooks Fitch would not pay in full for the Goods, that their issued collateral checks would not be honored or processed, that the property represented as collateral was not, in fact, in the location where it was represented to be, that Brooks Fitch would not honor the indemnification agreements with ITM, pay the applicable fees to ITM, allow the Goods to be transferred to the Sea Jet, and later, Price Transfer, or discharge all obligations owed to ITM, ONEL and the PRC Manufacturers.") (emphasis added).

made 'misrepresentations regarding the value of the Travel Club memberships' "). Plaintiffs' section 1962(c) claim is thus insufficient as currently pled. See, e.g., Egnotovich v. Greenfield Twp. Sewer Authority, 304 Fed. Appx. 94, 98 (3d Cir. 2008) ("Conclusory allegations of a pattern of racketeering activity, in this case, a fraudulent scheme, are insufficient to survive a Rule 12(b)(6) motion.").

**3.     RICO Section 1962(d) Claim**

Section 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Having found that Plaintiffs' proposed section 1962(b) and (c) claims have been insufficiently pled, Plaintiffs cannot maintain a claim under section 1962(d). See, e.g., Lightning Lube, 4 F.3d at 1191 ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."). Plaintiffs' motion to amend to add a claim pursuant to section 1962(d) is therefore denied without prejudice.

## CONCLUSION

Having found that Plaintiffs' proposed RICO claims against Joseph and Eli Safdieh have been inadequately pled, Plaintiffs' motion to amend is denied without prejudice. To the extent the pleading deficiencies in Plaintiffs' proposed RICO claims can be cured by way of amendment, the Court will afford Plaintiffs one final opportunity to renew their motion to add such claims.

An appropriate Order accompanies this Opinion.

**Dated: February 1, 2012**                              s/ Mark Falk
                                                         **MARK FALK**
                                                         **United States Magistrate Judge**

Orig.: Clerk of the Court
       Hon. Dennis M. Cavanaugh, U.S.D.J.
       All Parties
       File