**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

INTERNATIONAL TRANSPORT
MANAGEMENT CORPORATION, *et al.*,

                      **Plaintiffs,**

      v.

BROOKS FITCH APPAREL GROUP,
LLC, *et al.*,

                      **Defendants.**

Civil Action No. 11-1921 (ES) (JAD)

OPINION

**SALAS, DISTRICT JUDGE**

    Before the Court is plaintiff Ocean Navigator Express Line's ("ONEL") motion to amend the judgments against defendants Brooks Fitch Apparel Group, LLC ("Brooks Fitch") and Joseph E. Safdieh ("Safdieh") (collectively, "Defendants") to add pre- and post-judgment interest. (D.E. No. 221). Having considered the parties' submissions, which includes ONEL's moving brief (D.E. No. 221-1 ("Pl.'s Mov. Br.")), Defendants' opposition (D.E. No. 225 ("Defs.' Opp. Br.")), and ONEL's reply (D.E. No. 226), the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). As set forth below, the Court GRANTS ONEL's motion to amend.

**I.**      **Background and Procedural History**[1]

    Before its insolvency, Brooks Fitch was in the business of designing and merchandizing children's clothing and other textiles and bringing those items from Asia to the United States for consumers. After purchasing millions of dollars' worth of items from various Chinese

---

[1] The Court generously borrows much of the factual background from Chief Judge Linares's (ret.) April 26, 2018 Opinion holding Defendants liable to ONEL. (D.E. No. 190 ("April 26 Opinion") at 1–11).

manufacturers, Brooks Fitch contracted with International Transport Management Corporation ("ITMC") to ship those items from China to the United States. ITMC, in turn, entered into an agreement with ONEL to transport those items to the United States. In order to receive the items from ONEL in the United States, Brooks Fitch was required to pay the Chinese manufacturers for the shipments while they were en route. Brooks Fitch did not pay the manufacturers, but it still received the shipments from ONEL by entering into various indemnity agreements with ONEL and ITMC and by providing ONEL and ITMC various checks as collateral in the event that it did not pay the Chinese manufacturers. When it became clear that Brooks Fitch would not honor its obligations to the Chinese manufacturers, ITMC sought to cash the collateral checks, all of which bounced. The Chinese manufacturers eventually pursued legal action against ONEL for releasing the shipments to Brooks Fitch, as well as against ONEL's corporate affiliates—Cargo Services Far East Limited (ONEL's parent corporation), and Cargo Services (China) Ltd. (ONEL's sister corporation). Those lawsuits led to various settlements and judgments, all of which were satisfied, not by ONEL, but by its corporate affiliates.

The present case concerns ONEL's legal action against Brooks Fitch and Safdieh, the principal of Brooks Fitch, for indemnification for the settlements and judgements paid to the Chinese manufacturers. On April 26, 2018, following a one-day bench trial held on October 23, 2017, Chief Judge Linares made two findings critical to the instant motion: first, under Federal Rule of Civil Procedure 17, ONEL was a real party in interest that could "properly bring this claim for damages against Brooks Fitch," despite the fact that ONEL did not itself satisfy the settlements and judgments to the Chinese manufacturers (April 26 Opinion at 16); and second, Brooks Fitch was liable to ONEL for $4,155,006.50 in compensatory damages for breach of contract (D.E. No. 191). On October 12, 2018, Chief Judge Linares granted ONEL's motion to amend the judgment

under Federal Rule of Civil Procedure 59(e) to add an additional $40,000 in compensatory damages, increasing the total judgment against Brooks Fitch to $4,195,006.50. (D.E. No. 205 at 4–5 & 11). Chief Judge Linares also denied Brooks Fitch's motion for reconsideration, which, in relevant part, sought to relitigate Chief Judge Linares's ruling that ONEL was a real party. (*Id.* at 5–6). On August 14, 2019, after this case was reassigned to the undersigned, the Court held that ONEL could recover the judgment against Brooks Fitch from Safdieh by piercing the corporate veil. (D.E. No. 219 at 12 ("August 14 Opinion")). The Court also ordered ONEL to "submit its calculations for pre- and post-judgment interest so that the Court may calculate the total judgment." (D.E. No. 220). ONEL has filed that motion.

## II.   Discussion[2]

### A.   Prejudgment Interest

Neither party disputes that New Jersey prejudgment interest law governs this Court's resolution of ONEL's motion, even though New York law governed the parties' contract dispute

---

[2] The parties dispute whether Rule 59(e) is the appropriate vehicle for the instant motion. Defendants contend that there has been no judgment and thus nothing for the Court to amend or correct. (Defs.' Opp. Br. at 3). As for prejudgment interest, that contention is incorrect; motions to amend a judgment to include prejudgment interest are properly asserted under Rule 59(e). *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989); *Winters v. Patel*, 154 F. App'x 299, 304 (3d Cir. 2005) ("[M]otions for prejudgment interest under New Jersey law are properly characterized as Rule 59(e) motions to alter or amend judgment." (citing *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 746–47 (3d Cir. 1990))). As for post-judgment interest, the Third Circuit has explained that a plaintiff need not ask for post-judgment interest in a motion to amend under Rule 59(e) because "post-judgment interest is awarded by statute as a matter of law so it is automatically added, whether or not the district court orders it." *Dunn v. HOVIC*, 13 F.3d 58, 62 (3d Cir. 1993). At least one court has relied on similar reasoning to find a motion to amend to add post-judgment interest "moot." *See Yarnall v. The Philadelphia Sch. Dist.*, 180 F. Supp. 3d 366, 373 (E.D. Pa. 2016). However, many other courts have entertained such motions. *See, e.g.*, *Argue v. David Davis Enterprises, Inc.,* No. 02-9521, 2009 WL 750197, at *27 (E.D. Pa. Mar. 20, 2009); *Crowley v. Chait*, No. 85-2441, 2006 WL 8445577, at *2 (D.N.J. Mar. 7, 2006); *De Puy Inc. v. Biomedical Eng'g Tr.*, 216 F. Supp. 2d 358, 361 (D.N.J. 2001); *Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 568 F. Supp. 507, 511 (S.D.N.Y. 1983) ("The inclusion in the amended judgment entered by this Court on July 20, 1981 of a provision for post-judgment interest is thus nothing more than an obvious statement of the applicable statutory rate, which would have been earned whether or not recited in the judgment."); *see also Young v. W. Coast Indus. Relations Ass'n, Inc.*, 144 F.R.D. 206, 212 (D. Del. 1992) ("Generally, motions to reconsider, vacate, set aside or reargue are *construed as Rule 59 motions*, *as are* motions to amend the complaint, for rehearing, to dismiss for lack of jurisdiction, *to amend judgment to include post judgment interest*, to correct the judgment and for a stay. (citing 6A Moore's Federal Practice 2d, ¶ 59.12[1] n. 29–36 (1991)) (emphasis added)). Either way, Defendants do not object to this Court now ruling on ONEL's entitlement to post-judgment interest.

3

(April 26 Opinion at 7, 17) and whether ONEL could properly pierce the corporate veil (August 14 Opinion at 6). That is because, as a federal court sitting in diversity jurisdiction, this Court must apply the forum state's choice-of-law rules, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941), and New Jersey choice-of-law rules dictate that New Jersey prejudgment interest law applies even if another state's law ultimately governed the substantive issues at trial, *see, e.g.*, *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Sys.*, 730 A.2d 843, 848 (N.J. 1999); *Busik v. Levine*, 307 A.2d 571, 581 (N.J. 1973); *see also Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, 999 F. Supp. 2d 690, 758 (D.N.J. 2014); *Buck Consultants, Inc. v. Glenpointe Assocs.*, No. 03-0454, 2010 WL 2104982, *2 (D.N.J. May 25, 2010) (citing *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 773 (3d Cir. 1990)).

ONEL seeks an award of prejudgment interest on the $4,195,006.50 judgment that it obtained against Defendants. (*See generally* Pl.'s Mov. Br.). The prejudgment interest, ONEL argues, should be compounded annually (*id.* at 10–11), accruing from the date of each payment that its corporate affiliates made to the Chinese manufacturers until the Court entered judgment in favor of ONEL against Safdieh, which, according to ONEL, was on August 14, 2019, the date the Court held that ONEL could pierce the corporate veil and recover from Safdieh (*id.* at 7–10, 12–22). The applicable interest rates, ONEL maintains by citing New Jersey Court Rule 4:42-11(a)(iii), should be (i) the average rate of return for the preceding fiscal year of the State of New Jersey Cash Management Fund *plus* (ii) 2%. (*Id.* at 5–7).

Defendants do not dispute ONEL's calculations as to the principal amounts upon which interest should be applied, the rate of interest to be applied, or the period when prejudgment interest should accrue. (*See* Defs.' Opp. Br. at 7). Because the parties agree, the Court does not deviate

4

from those submissions.[3]    Defendants' opposition is limited to two objections, regarding (i) ONEL's claim of entitlement to prejudgment interest, and (ii) compounding any interest owed. (*Id.* at 4–7).  The Court addresses each objection in turn.

### i. ONEL is Entitled to Prejudgment Interest

Under New Jersey law, "the award of prejudgment interest on contract and equitable claims is based on equitable principles." *Cty. of Essex v. First Union Nat. Bank*, 891 A.2d 600, 608 (N.J. 2006). To determine whether to award prejudgment interest,

> [t]he basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.

*Id.* (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 323 A.2d 495, 512 (N.J. 1974)). Awarding prejudgment interest is intended, not to be "punitive," but rather to be "compensatory, to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed." *Tobin v. Jersey Shore Bank*, 460 A.2d 195, 198 (N.J. Super. Ct. App. Div. 1983) (quoting *Busik*, 307 A.2d at 575); *see also Thabault v. Chait*, 541 F.3d 512,

---

[3] Although the parties agree on the relevant dates, it is not clear whether there should be separate dates of judgment for the different monetary awards in this case.  Because New Jersey law governs whether prejudgment interest is available here, and because it requires courts to apply equitable principles (discussed *infra*), the Court should set the judgment date(s) for prejudgment interest *the same* as the judgment date(s) for post-judgment interest in order to avoid the inequitable outcome of doubly awarding interest to ONEL.  The judgment date for post-judgment interest is governed by 28 U.S.C. § 1961 (discussed *infra*), and in determining the judgment date for purposes § 1961, the Third Circuit has explained that "a judgment must include both '*an identification of the parties for and against whom judgment is being entered*,' and 'a definite and certain designation of the amount . . . owed.'" *Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 175 (3d Cir. 2010) (quoting *Eaves v. Cty. of Cape May*, 239 F.3d 527, 533 (3d Cir. 2001)) (emphasis added).  When reading the emphasized language, it initially appears the date of judgment should be the date that this Court held ONEL could pierce the corporate veil, which was on August 14, 2019.  But under New York law, piercing the corporate veil is not a separate a cause of action independent against the corporation but rather "an assertion of facts and circumstances which will persuade the court *to impose the corporate obligation on its owners*." *Morris v. New York State Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993) (emphasis added).  As a result, piercing the corporate veil may have meant that Safdieh was obligated to satisfy the judgments against Brooks Fitch—dated April 26, 2018, for $4,155,006.50, and October 12, 2018, for $40,000.  The distinction is not insignificant, for the rate of interest under federal law is *less* than the rate of interest under state law.  The Court ultimately need not answer these difficult questions, for it is not "the responsibility of . . . the District Court . . . to make the parties' arguments for them." *Sang Geoul Lee v. Won Il Park*, 720 F. App'x 663, 666 (3d Cir. 2017).

533 (3d Cir. 2008) ("Under New Jersey state law, the purpose of prejudgment interest is to 'compensate the plaintiff for the loss of income that would have been earned on the judgment had it been paid earlier.'" (quoting *Ruff v. Weintraub*, 519 A.2d 1384, 1390 (N.J. 1987))); Sylvia B. Pressler, *Rules Governing the Courts of the State of New Jersey*, R. 4:42-11, cmt. 8 ("Prejudgment interest is not a penalty but rather its allowance simply recognizes that until the judgment is entered and paid, the defendant has had the use of money rightfully the plaintiff's.").

The Court finds that ONEL is entitled to prejudgment interest. If Brooks Fitch had not withheld payment to the Chinese manufactures or provide ITMC with bad checks, then it would not have had the benefit of money to which it was not entitled. Brooks Fitch thus benefited by holding onto that money; it would be unjust to allow it to retain that benefit. In addition, if Brooks Fitch made good on its obligations, ONEL's parent and sister corporations would not have had to pay the Chinese manufacturers. As a factual matter, making those payments deprived ONEL's corporate affiliates of money that they could have invested in the market or elsewhere to make more; those investments would have benefited, not only themselves, but also their overall corporate structure, which includes ONEL. Awarding prejudgment interest to ONEL is therefore proper.

Defendants argue that ONEL "is not entitled to interest at all, because its money was not involved," and because "ONEL could not have lost the use of what it never had in the first place." (Defs.' Opp. Br. at 11). Although Defendants concede that Chief Judge Linares previously held ONEL to be a real party in interest under Rule 17, it argues that "the damages in the Chinese settlements and lawsuits were paid out by" its parent and sister corporations; ONEL "is, and remains," according to Defendants, "a talismanic plaintiff with no loss, no harm and no real stake in the outcome." (*Id.* at 4).

6

For two reasons, the Court rejects that argument. First, it elevates form over substance. Chief Judge Linares's post-trial findings bely any suggestion that harm did not flow to ONEL as a result of Defendants' wrongdoing. Chief Judge Linares explicitly held that ONEL could "properly bring this claim for damages" as a real party in interest under Rule 17 because ONEL and its corporate affiliates were "*all part of a single operation.*" (April 26 Opinion at 16 (quoting *Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Mgmt., Inc.*, 620 F.2d 1, 5 (1st Cir. 1980)) (emphasis added)). Defendant has not challenged that finding. Second, the New Jersey Supreme Court has affirmed awards of prejudgment interest for equitable causes of action such as disgorgement despite there being no proof of damages to the plaintiffs. *See First Union Nat'l Bank*, 891 A.2d at 609 (affirming award of prejudgment interest on disgorgement award even though disgorgement "is grounded in the theory that a wrongdoer should not profit from its wrongdoing regardless of whether the innocent party suffered any damages"); *Driscoll v. Burlington-Bristol Bridge Co.*, 86 A.2d 201, 234 (N.J. 1952) (awarding prejudgment interest on disgorgement award). Such an outcome makes good sense, too. As the Supreme Court has explained, albeit in the context of federal law, "[a] rule denying prejudgment interest not only undercompensates the [plaintiff] but may also grant a windfall to the [defendant] and create an incentive to prolong litigation." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656 n.10 (1983). Equity demands granting prejudgment interest to ONEL here; otherwise, Defendants will be rewarded for their unlawful and inequitable conduct and thus unjustly enriched.

### ii.     The Prejudgment Interest Will Be Computed On A Simple Basis

Under New Jersey law, equitable principles govern the rate and amount of interest for judgments arising out of contract disputes. *See Litton Indus., Inc. v. IMO Indus.*, Inc., 982 A.2d 420, 430 (N.J. 2009). New Jersey Court Rule 4:42-11(a), which governs tort actions but has been

7

relied upon by New Jersey courts as a guide in determining whether to compound prejudgment interest in contract disputes, expresses a preference that judgment bear simple, as opposed to compound, interest: "Except as otherwise ordered by the court or provided by law, *judgments*, awards and orders for the payment of money, taxed costs and attorney's fees shall bear *simple interest*" (emphasis added). *See also Litton Indus.*, 982 A.2d at 431 (holding that trial court did not abuse its discretion in relying on "*R.* 4:42-11 as a guide"); *DialAmerica Mktg., Inc. v. KeySpan Energy Corp.*, 865 A.2d 728, 733 (N.J. App. Div. 2005) (explaining that "aspects of the rule constitute factors for the court's consideration in exercising its discretion in determining to award prejudgment interest in this different context and in setting the rate of that interest"); *Benevenga v. Digregorio*, 737 A.2d 696, 700 (N.J. App. Div. 1999) (applying rule to judgment arising out of contract dispute). The rule thus provides an adequate "starting point" for a court, from which it can deviate in appropriate circumstances. *Buck Consultants*, 2010 WL 2104982, at *2.

Neither party disputes, and the Court agrees, that ONEL would be entitled to prejudgment interest in the amount of (i) $783,698.43, if the Court computes prejudgment interest on a compound basis; and (ii) $719,471.59, if the Court computes prejudgment interest on a simple basis. ONEL argues that, because it is a sophisticated business entity and would have deposited the money in an account bearing compound interest, it would be equitable to calculate its prejudgment interest on a compound basis. (Pl.'s Mov. Br. at 11). In support of this argument, ONEL cites *Buck Consultants*, a case where the court "appl[ied] compound interest because it is reasonable to assume that a sophisticated business entity, such as [the plaintiff], would have deposited the withheld funds in a financial vehicle that earned compound interest" and because "the relatively short period of time over which [the plaintiff] has been deprived of the use of its funds guards against the concern that compounding the interest due would 'unduly hasten[] the

8

accumulation of debt.'" *See* 2010 WL 2104982, at *3 (quoting *Abramowitz v. Washington Cemetery Ass'n*, 51 A.2d 461, 463 (N.J. Ch. 1947)). Defendants object to compounding interest, pointing out that, under New Jersey law, compounding interest is an exception to the general rule that interest should be computed on a simple basis. (Defs.' Opp. Br. at 5–6). Placing money in an account that bears compound interest, Defendants claim, is hardly unusual enough to justify deviating from New Jersey's clear preference for simple interest. (Defs.' Opp. Br. at 6).

Although ONEL is clearly a sophisticated business entity that likely would have deposited the money in an account bearing compound interest[4]—a factor that cuts in favor of compounding interest here—this Court finds it would be inequitable to compound interest. Compounding prejudgment interest is "harsh and oppressive," *Henderson v. Camden Cty. Mun. Util. Auth.*, 826 A.2d 615, 619 (N.J. 2003) (citation omitted), particularly where, as here, the interest would compound over a long period of time (eight years) on a substantial sum ($4,195,006.50). Compounding interest in this case would increase Defendants' liability by a little more than $60,000. This case is thus in a markedly different posture than *Buck Consultants*, where the plaintiff sought to compound interest over a "relatively short period of time" (two years), mitigating the concern that compounding interest would unreasonably accumulate debt. *See* 2010 WL 2104982, at *3. Although Plaintiffs argues that the eight-year delay in this case is attributable to Defendants (due to Brooks Fitch's insolvency and Defendants' representation by multiple law firms at different times) (Pl.'s Mov. Br. at 4), the Court perceives no bad faith on the part of Defendants, and much of delay appears to arise from relatively normal litigation activity, including changes of counsel from both parties, the amendment of pleadings and related motion practice, and judicial reassignments.

---

[4] It is part of a large corporate structure; has offices, operations, and projects in around 40 countries; employs about 9,000 people; and had a gross revenue of about $1.3 billion in 2016. (D.E. No. 185 at 34–35).

The Court therefore will compute prejudgment interest on a simple basis. Doing so, neither party disputes, and this Court finds, yields an amount of $719,471.59 in prejudgment interest.

### B. Post-Judgment Interest

As a threshold matter, although the Court is sitting in diversity jurisdiction and has just applied New Jersey law to the issue of prejudgment interest, the Court must apply 28 U.S.C. § 1961 to the issue of post-judgment interest. *See Travelers Cas. & Sur.*, 609 F.3d at 157 (applying state prejudgment interest law and federal post-judgment interest law); *Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988) ("The matter is governed by 28 U.S.C. § 1961 notwithstanding that this is a diversity action."). Unlike New Jersey prejudgment interest law, § 1961 operates in mandatory terms. *See Dunn*, 13 F.3d at 60 ("Section 1961 dictates that interest be awarded[.]"). Section 1961(a) directs the Court to apply post-judgment interest to "any money judgment in a civil case recovered in a district court," to calculate the rate "from the date of the entry of the judgment," and to set the "rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Section 1961(b) further directs the Court to compute interest "daily to the date of payment" and to "compound[ interest] annually."

ONEL asserts that the Court should calculate post-judgment interest (i) at an interest rate of 1.79%; (ii) "based on the $4,195,006.50 judgments entered against Brooks Fitch and Joseph Safdieh, *plus the pre-judgment interest in the amount of $783,698.43*"; and (iii) as accruing against Safdieh from *August 14, 2019*, until the date of payment. (Pl.'s Mov. Br. at 24 (emphasis added); D.E. No. 221-2 ¶ 6 Ex. 6 (indicating the U.S. Department of Treasury constant maturity rates for the week of August 5, 2019)). The Court will award post-judgment interest at an interest rate of

10

1.79% to be applied to the $4,195,006.50 judgment, with interest accruing from August 14, 2019, until the date of payment. That interest will compound annually.

However, the Court will not at this time award post-judgment interest on the prejudgment interest award. Unlike the question whether August 14, 2019, is the proper date of judgment for the $4,195,006.50 award, see *supra* note 3, determining the proper date of judgment on the award of prejudgment interest is simple. Although ONEL is entitled to post-judgment interest on its award of prejudgment interest, that interest does not accrue until "a judgment quantifying *that* award has been entered." *Travelers Cas. & Sur.*, 609 F.3d at 175 (emphasis added). Therefore, the date of judgment on that award is the date of this Opinion and accompanying Order—not August 14, 2019. As a result, ONEL has not offered the Court the applicable interest rate for this award. ONEL may file another motion to add post-judgment interest on its award of prejudgment interest (which is $719,471.59, not $783,698.43), but ONEL must provide the Court with the applicable interest rate like it did for the August 14 judgment—a "rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). The date of the judgment for this award is the date of this Opinion and accompanying Order.[5]

### III. Conclusion

For the foregoing reasons, ONEL's motion to amend the judgment to award pre- and post-judgment interest is GRANTED. The Court grants prejudgment interest in an amount of $719,471.59. The Court also awards post-judgment interest at a rate of 1.79% to be applied to the award of $4,195,006.50; that interest will compound annually, and will accrue from August 14,

---

[5] Of course, ONEL need not involve the Court to be entitled to that interest. *See Dunn*, 13 F.3d at 62 ("[P]ost-judgment interest is awarded by statute as a matter of law so it is automatically added, whether or not the district court orders it.").

2019, until the date of payment.  An appropriate Order accompanies this Opinion.

<u>*s/Esther Salas*</u>
**Esther Salas, U.S.D.J.**

12